**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

MICHAEL BEN-YOSEF,

      Plaintiff,

v.

SRC ENERGY INC.,
LYNN A. PETERSON,
RAYMOND E. MCELHANEY,
JACK AYDIN,
DANIEL E. KELLY,
PAUL KORUS, and
JENNIFER S. ZUCKER,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Michael Ben-Yosef ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against SRC Energy Inc. ("SRC" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by PDC Energy, Inc. ("PDC") (the "Proposed Transaction").

2.       On August 26, 2019, SRC and PDC issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell SRC to PDC.  Under the terms of the Merger Agreement, each SRC stockholder will be entitled to receive 0.158 of a share of PDC common stock for each SRC share they own (the "Merger Consideration").  Based on the closing price of PDC common stock on August 23, 2019, the Merger Consideration is valued at approximately $3.99 per share.  The Proposed Transaction is valued at approximately $1.7 billion, including SRC's net debt of approximately $685 million.

3.       On September 25, 2019, PDC filed a Form S-4 Registration Statement (as amended on October 23, 2019, the "Registration Statement") with the SEC.  The Registration Statement, which recommends that SRC stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) SRC and PDC management's financial projections for SRC, PDC and the pro forma company; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors Citigroup Global Markets Inc. ("Citi") and Goldman Sachs & Co. LLC ("Goldman"); and (iii) potential conflicts of interest faced by Citi and Goldman. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.       In short, unless remedied, SRC's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   SRC is headquartered and incorporated in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SRC common stock.

9.      Defendant SRC is a Colorado corporation with its principal executive offices located at 1675 Broadway, Suite 2600, Denver, Colorado 80202.  SRC is an independent oil and gas company engaged in the acquisition, development, and production of oil, natural gas, and natural gas liquids in the Denver-Julesburg ("D-J") Basin in Colorado.  The Company's common stock is traded on the NYSE American under the ticker symbol "SRCI."

10.     Defendant Lynn A. Peterson ("Peterson") joined the Company in May 2015 and serves as the Company's Chairman of the Board, Chief Executive Officer ("CEO"), and President.

11.     Defendant Raymond E. McElhaney ("McElhaney") is the Company's Lead Director and has been a director of the Company since May 2005.

12.     Defendant Jack Aydin ("Aydin") has been a director of the Company since July 2014.

13.     Defendant Daniel E. Kelly ("Kelly") has been a director of the Company since February 2016.

14.     Defendant Paul Korus ("Korus") has been a director of the Company since June 2016.

15.     Defendant Jennifer S. Zucker ("Zucker") has been a director of the Company since January 2018.

16.     Defendants identified in paragraphs 10 to 15 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17.     PDC is a Delaware corporation with its principal executive offices located at 1775 Sherman Street, Suite 3000, Denver, Colorado 80203. PDC is a domestic independent exploration and production company that acquires, explores and develops properties for the production of crude oil, natural gas and NGLs, with operations in the Wattenberg Field in Colorado and the Delaware Basin in Texas. PDC's common stock trades on the NASDAQ Global Select Market under the ticker symbol "PDCE."

## SUBSTANTIVE ALLEGATIONS

**Company Background**

18.     SRC is an independent oil and gas company engaged in the acquisition,

development, and production of oil, natural gas, and natural gas liquids ("NGLs") in the D-J Basin. The D-J Basin contains hydrocarbon-bearing deposits in several formations, including the Niobrara, Codell, Greenhorn, Shannon, Sussex, J-Sand, and D-Sand. The area has produced oil and natural gas for over fifty years and benefits from established infrastructure, long reserve life, and multiple service providers.

19. SRC's oil and natural gas activities are focused in the Wattenberg Field in Weld County, Colorado, an area that covers the western flank of the D-J Basin. The Company currently operates approximately 82% of its proved developed reserves and anticipates operating a majority of its future net drilling locations. SRC's current development plan anticipates that all of the Company's future activities will be concentrated in the Wattenberg Field.

20. On May 1, 2019, the Company issued a press release announcing its first quarter 2019 financial results, including revenue of $189.5 million, a 29% increase compared to the first quarter of 2018. Defendant Peterson commented on the quarter's results stating, "We are pleased with the progress being made in the Basin to address infrastructure expansion. As we move ahead with the development of our properties we look forward to working with all of our stakeholders."

21. On July 31, 2019, SRC announced its second quarter 2019 financial results. For the quarter, revenues were $162.6 million, an 11% increase compared to the second quarter of 2018. Net income totaled $54.5 million, or $0.22 per diluted share, compared to net income of $49.6 million, or $0.20 per diluted share, in the second quarter of 2018.

**The Proposed Transaction**

22. On August 26, 2019, SRC and PDC issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> DENVER, Aug. 26, 2019 -- PDC Energy, Inc. ("PDC" or the "Company") (NASDAQ: PDCE) and SRC Energy, Inc. ("SRC") (NYSE: SRCI) today

announced they have entered into a definitive merger agreement under which PDC will acquire SRC in an all-stock transaction valued at approximately $1.7 billion, including SRC's net debt of approximately $685 million as of June 30, 2019. Under the terms of the agreement, SRC shareholders will receive a fixed exchange ratio of 0.158 PDC shares for each share of SRC common stock, representing an implied value of $3.99 per share based on the PDC closing price as of August 23, 2019. The transaction, which is expected to close in the fourth quarter of 2019, has been unanimously approved by each company's board of directors.

**Key Transaction Highlights:**

- Materially increases PDC's scale with a consolidated, contiguous Core Wattenberg leasehold position of approximately 182,000 net acres located entirely in Weld County and pro forma second quarter 2019 total production of nearly 200,000 barrels of oil equivalent ("Boe") per day (166,000 Boe per day in the Wattenberg). On a pro forma basis, the combined company is the second largest producer in the DJ basin. Coupled with its approximate 36,000 net acre Delaware Basin position, the Company will have core assets in two of the premier U.S. onshore basins.

- Materially enhances free cash flow profile and enhances ability to return additional capital to shareholders. Pro forma free cash flow is estimated to be approximately $800 million from the third quarter of 2019 through year-end 2021, assuming $55 per barrel NYMEX. PDC has increased and extended its existing share repurchase program from $200 million to $525 million, with a target completion date of year-end 2021. Year-to-date, PDC has repurchased $125 million of its shares and plans to utilize approximately 50 percent of the estimated $800 million of free cash flow in the same period to complete the remaining $400 million repurchase program.

- Creates a low-cost mid-cap producer with anticipated peer-leading G&A of approximately $2.00 per Boe in 2020. PDC expects to realize approximately $40 million of G&A savings in 2020 with an incremental $10 million of G&A synergies in 2021, after the completion of its integration plan.

- All-stock transaction ensures the combined company will have a strong balance sheet with a pro forma leverage ratio of 1.3x at June 30, 2019 and projected leverage ratio of approximately 1.0x at year-end 2020, assuming $55 per barrel NYMEX.

- The transaction is expected to be immediately accretive to key 2020 metrics, including: free cash flow per share, cash return on capital invested ("CROCI"), net asset value, G&A per Boe, LOE per Boe, leverage ratio and inventory life.

**CEO Commentary**

"SRC's complementary, high-quality assets in the Core Wattenberg, coupled with our existing inventory and track record of operational excellence will create a best-in-class operator with the size, scale and financial positioning to thrive in today's market," said Bart Brookman, President and Chief Executive Officer of PDC. "We remain committed to our core Delaware Basin acreage position and are confident the combined company with its multi-basin focus will be well-positioned to deliver superior shareholder returns. With an even more competitive cost structure, including peer-leading G&A and LOE per Boe, the combined company will have the financial flexibility and sustainable free cash flow to return significant capital to shareholders and capitalize on additional growth opportunities."

Brookman continued, "Importantly, this transaction will join two organizations grounded in strong core values and a shared commitment to responsible and safe operations. Both PDC and SRC have deep regulatory and community relationships, and together we will continue to prioritize the health and safety of our employees and stakeholders, as well as the environment and the communities in which we live and operate. We look forward to working with SRC to integrate these two companies and achieve our shared objectives."

Lynn A. Peterson, Chief Executive Officer and Chairman of the Board of SRC Energy commented, "I am proud of the SRC team and the high-quality acreage and low-cost operations we have built together. We believe that this transaction will establish the combined company as a leader in the Colorado energy industry. The transaction also provides SRC shareholders with the opportunity to participate in the significant upside potential created by a larger-scale DJ Basin producer with complementary assets in the prolific Delaware Basin. We look forward to working closely with PDC to ensure that the full potential of this combination is realized for the benefit of all of our stakeholders."

* * *

**Preliminary Pro Forma 2020 Outlook**

PDC's long-term strategy is to be a low-cost operator that generates and returns free cash flow to shareholders, while delivering solid production and cash flow growth on a debt-adjusted per share basis. In 2020, PDC plans to invest between $1.2 billion and $1.4 billion to operate three Wattenberg and two Delaware Basin drilling rigs. The plan is expected to generate approximately $275 million in free cash flow assuming $55 per barrel and $2.70 per Mcf NYMEX oil and gas prices, respectively, with full-year production averaging between 200,000 and 220,000 Boe per day. Finally, PDC expects its combined G&A and LOE to be less than $5 per Boe.

**Transaction Details**

Under the terms of the agreement, SRC shareholders will receive a fixed exchange ratio of 0.158 PDC shares for each share of SRC common stock they own, representing an implied value of $3.99 per SRC share based on PDC's closing common stock price on August 23, 2019, or $1.7 billion in the aggregate including the assumption of approximately $685 million in debt. The consideration represents a premium of 6.8 percent to the 30-day average exchange ratio of 0.148x. Upon closing of the transaction, PDC shareholders will own approximately 62 percent of the combined company, and SRC shareholders will own approximately 38 percent, on a fully diluted basis. The all-stock transaction is intended to be tax-free to SRC shareholders.

**Governance and Leadership**

Upon closing, PDCs' board of directors will be expanded to nine directors, expected to include two members from the SRC board of directors. PDC's board of directors also plans to form a three-member group focused on integration planning and opportunities for ongoing corporate synergies and cost efficiencies. The combined company will be led by PDC's executive management team and will remain headquartered in Denver, Colorado.

**Timing and Approvals**

The transaction, which is expected to close in the fourth quarter of 2019, is subject to customary closing conditions and the satisfaction of certain regulatory approvals, including the approval of PDC and SRC shareholders.

**Insiders' Interests in the Proposed Transaction**

23.     SRC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of SRC.

24.     Notably, defendants Peterson and Korus have secured positions for themselves as directors of the combined company upon completion of the Proposed Transaction.

25.     Company insiders also stand to reap substantial financial benefits for securing the deal with PDC.  According to the Registration Statement:

SRC may grant Transaction Bonuses to SRC's executive officers and other employees, and to SRC's non-employee directors in an aggregate amount not to exceed $4,843,000 (of which no more than $4,693,000 will be allocated to

8

employees and no more than $150,000 may be allocated to non-employee directors, which is up to approximately $37,500 per such director). The SRC board has yet to determine to whom, and in what amounts, it will issue Transaction Bonuses.

Registration Statement at 116.

26.      Moreover, if they are terminated in connection with the Proposed Transaction, SRC's named executive officers are set to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| *Named Executive Officers* | | | | |
| Lynn Peterson | 5,076,000 | 8,626,991 | 15,055 | 13,718,046 |
| James Henderson | 2,291,010 | 3,434,935 | 21,226 | 5,747,171 |
| Cathleen Osborn | 1,598,235 | 1,743,299 | 11,872 | 3,353,406 |
| Nick Spence | 1,608,641 | 1,743,299 | 28,038 | 3,379,979 |
| Mike Eberhard | 1,608,641 | 1,743,299 | 10,609 | 3,362,550 |

## The Registration Statement Contains Material Misstatements or Omissions

27.      Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to SRC's stockholders.   The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

28.      Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SRC and PDC management's financial projections for SRC, PDC and the pro forma company; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Citi and Goldman; and (iii) potential conflicts of interest faced by Citi and Goldman.

*Material Omissions Concerning Financial Projections for SRC, PDC and the Pro Forma Company*

29.      The Registration Statement omits material information regarding the Company's

financial projections for SRC, PDC and the pro forma combined company, provided by SRC and

PDC management and relied upon by Citi and Goldman for their analyses.

30.      For example, the Registration Statement sets forth:

In arriving at its opinion, Citi had, among other things:

* * *

- reviewed certain publicly available business and financial information relating
  to SRC and PDC, as well as **certain financial forecasts and other information
  and data relating to SRC and PDC provided to and/or discussed with Citi
  by the managements of SRC and PDC, including certain internal financial
  forecasts and other information and data relating to SRC prepared by the
  management of SRC, and certain internal financial forecasts and other
  information and data relating to PDC prepared by the management of
  PDC as reviewed and approved by the management of SRC**;

* * *

- been provided with **certain information and data relating to the potential
  strategic implications and financial and operational benefits (including the
  amount, timing and achievability thereof) anticipated by the managements
  of SRC and PDC to result from the merger**;

* * *

- reviewed **certain potential pro forma financial effects of the merger on PDC
  utilizing the financial forecasts and other information and data relating to
  SRC and PDC** and the potential strategic implications and financial and
  operational benefits referred to above[.]

*Id.* at 91-92 (emphasis added).

31.      In addition, in connection with Citi's *Net Asset Value Analysis*, the Registration

Statement sets forth:

Citi performed a net asset value analysis of SRC based on the SRC forecasts . . .
An implied aggregate reference range for SRC's proved developed producing
reserves and currently undeveloped resources was derived by calculating the net

present values (as of June 30, 2019) of the **unlevered, after-tax free cash flows that SRC was projected to generate from such assets based on the SRC forecasts** utilizing NYMEX Strip Pricing . . . .

Citi performed a net asset value analysis of PDC based on the PDC forecasts . . . . An implied aggregate reference range for PDC's proved developed producing reserves and currently undeveloped resources was derived by calculating the net present values (as of June 30, 2019) of the **unlevered, after-tax free cash flows that PDC was projected to generate from such assets based on the PDC forecasts** utilizing NYMEX Strip Pricing . . . .

*Id.* at 97-98.

33. Similarly, with respect to Goldman's analyses, the Registration Statement sets forth:

In connection with rendering the opinion described above and performing its related financial analyses, Goldman Sachs reviewed, among other things:

\* \* \*

• certain internal financial analyses and forecasts for SRC prepared by its management (which we refer to for purposes of this section as the "SRC Forecasts") and for PDC stand alone prepared by its management (which we refer to for purposes of this section as the "PDC Standalone Forecasts"), **and certain financial analyses and forecasts for PDC pro forma for the merger prepared by the management of PDC** (which we refer to for purposes of this section as the "PDC Pro Forma Forecasts" and, together with the SRC Forecasts and the PDC Standalone Forecasts, the "Forecasts"), in each case, as approved for Goldman Sachs' use by SRC, including certain operating synergies projected by the management of PDC to result from the merger, as approved for Goldman Sachs' use by SRC (which we refer to for purposes of this section as the "Synergies").

*Id.* at 99-100 (emphasis added).

33. In addition, in connection with Goldman's *Illustrative Discounted Cash Flow Analysis-SRC Standalone*, *Illustrative Discounted Cash Flow Analysis-PDC Standalone*, and *Illustrative Discounted Cash Flow Analysis-Implied Valuation Uplift* of PDC, SRC and the pro forma combined company, respectively, the Registration Statement sets forth:

Using the SRC Forecasts, Goldman Sachs performed a discounted cash flow analysis of shares of SRC common stock on a standalone basis. . . . Goldman Sachs discounted to present value as of June 30, 2019 (i) **estimates of unlevered free cash flow for SRC for July 1, 2019 through December 31, 2024 as reflected in the SRC Forecasts** . . . .

Using the PDC Standalone Forecasts, Goldman Sachs performed a discounted cash flow analysis of shares of PDC common stock on a standalone basis. . . . Goldman Sachs discounted to present value as of June 30, 2019 (i) **estimates of unlevered free cash flow for PDC for July 1, 2019 through December 31, 2024 as reflected in the PDC Standalone Forecasts** . . . .

Using the Pro Forma Forecasts, Goldman Sachs performed an illustrative discounted cash flow analysis of the combined company on a pro forma basis as of June 30, 2019. . . . Goldman Sachs discounted to present value as of June 30, 2019, (i) **estimates of unlevered free cash flow for the pro forma combined company for July 1, 2019 through December 31, 2024 as reflected in the Pro Forma Forecasts** . . . .

*Id.* at 103-104 (emphasis added).

34.     The Registration Statement, however, fails to set forth: (i) certain of the projections for SRC and PDC prepared by SRC and PDC management and provided to Citi and Goldman, including the respective unlevered free cash flows; (ii) the projections for PDC pro forma for the Proposed Transaction, relied upon by Goldman for its analyses, including the unlevered free cash flow for the pro forma combined company; and (iii) the operating synergies projected by the management of PDC to result from the Proposed Transaction.

35.     The omission of this information renders the statements in the "Certain Unaudited Forecasted Financial Information" and "Opinions of Citi and Goldman Sachs, SRC's Financial Advisors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's and Goldman's Financial Analyses***

36.     The Registration Statement describes Citi's and Goldman's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the descriptions

of Citi's and Goldman's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses.   Without this information, as described below, SRC's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's and Goldman's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

37.     With respect to Citi's *Selected Public Companies Analysis* of PDC and SRC, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by Citi; and (ii) PDC's and SRC's calendar year 2019 and 2020 adjusted EBITDA and cash flow per share utilized by Citi in its analysis.

38.     With respect to Citi's *Net Asset Value Analysis* of SRC, the Registration Statement fails to disclose: (i) SRC's unlevered, after-tax free cash flows for the projection period, and the underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 9.5% to 11.0%; (iii) SRC's estimated post-tax corporate expenses and net hedge gains as of June 30, 2019; and (iv) SRC's estimated net debt as of June 30, 2019.

39.     With respect to Citi's *Net Asset Value Analysis* of PDC, the Registration Statement fails to disclose: (i) PDC's unlevered, after-tax free cash flows for the projection period, and the underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.3% to 9.6%; (iii) PDC's estimated post-tax corporate expenses, net hedge gains and losses, and additional payments from the sale of PDC's midstream assets as of June 30, 2019; and (iv) PDC's estimated net debt as of June 30, 2019.

40.     With respect to Citi's *Relative Contribution Analysis*, the Registration Statement fails to disclose the combined company's estimated adjusted EBITDA and operating cash flow for calendar years 2019 and 2020.

41.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis-SRC Standalone*, the Registration Statement fails to disclose: (i) the unlevered free cash flow for SRC for July 1, 2019 through December 31, 2024, and the underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 9.0%; (iii) the estimated terminal year EBITDA for SRC; (iv) SRC's net debt as of June 30, 2019; (v) the number of fully diluted outstanding SRC shares; and (vi) the estimated terminal value for SRC.

42.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis-PDC Standalone*, the Registration Statement fails to disclose: (i) the unlevered free cash flow for PDC for July 1, 2019 through December 31, 2024, and the underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 9.0% (iii) the estimated terminal year EBITDA for PDC; (iv) PDC's net debt as of June 30, 2019; (v) the estimated present value of the unconditional contingent payment to be made to PDC in connection with the sale of its midstream assets; (vi) the number of fully diluted outstanding PDC shares; and (vii) the estimated terminal value for PDC.

43.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis-Implied Valuation Uplift*, the Registration Statement fails to disclose: (i) the unlevered free cash flow for the pro forma combined company for July 1, 2019 through December 31, 2024, and the underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 9.0% (iii) the estimated terminal year EBITDA for the pro forma combined company; (iv) the pro forma net debt of the combined company as of June 30, 2019; (v) the estimated present value of the unconditional contingent payment to be made to PDC in connection with the sale of its midstream assets; (vi) the number of fully diluted outstanding shares of the pro forma combined company; and (vii) the estimated terminal value for the pro forma combined company.

44.     With respect to Goldman's *Illustrative Net Asset Value Analysis-SRC*, the Registration Statement fails to disclose: (i) the after-tax future cash flows that SRC could be expected to generate from its existing proved developed reserves, its development plan for proved undeveloped reserves, and development of additional undeveloped reserves and all underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 9.0%; and (iii) the value of estimated mark to market commodity hedges, general and administrative costs, net debt, and taxes payable by SRC.

45.     With respect to Goldman's *Illustrative Net Asset Value Analysis-PDC Standalone*, the Registration Statement fails to disclose: (i) the after-tax future cash flows that PDC could be expected to generate from its existing proved developed reserves, its development plan for proved undeveloped reserves, and development of additional undeveloped reserves and all underlying line items; (ii) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 9.0%; and (iii) the value of estimated mark to market commodity hedges, net operating losses, general and administrative costs, net debt, taxes payable by PDC, and contingent payments due by PDC.

46.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis-SRC, Illustrative Present Value of Future Share Price Analysis-PDC Standalone* and *Illustrative Present Value of Future Share Price Analysis-Implied Valuation Uplift*, the Registration Statement fails to disclose: (i) the estimated EBITDA for SRC for years 2022 to 2024; (ii) the estimated EBITDA for each of PDC and the pro forma combined company for years 2021 to 2024; (ii) quantification of the inputs and assumptions underlying the discount rate of 8.6%; and (iii) the number of fully diluted outstanding shares of SRC, PDC and the pro forma combined company, respectively.

47.     With respect to Goldman's *Premia Analysis*, the Registration Statement fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the sources thereof.

48.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

49.     The omission of this information renders the statements in the "Certain Unaudited Forecasted Financial Information" and "Opinions of Citi and Goldman Sachs, SRC's Financial Advisors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Citi's and Goldman's Potential Conflicts of Interest*

50.     The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisors, Citi and Goldman.

51.     The Registration Statement sets forth in connection with the Proposed Transaction "Citi may receive an additional fee of up to $3.5 million at SRC's sole discretion." *Id.* at 99. Similarly, "Goldman Sachs may receive an additional fee of up to $3.5 million at SRC's sole discretion." *Id*. at 108.   The Registration Statement, however, fails to disclose the agreed parameters for such additional discretionary fee, the criteria Citi and Goldman each need to satisfy to receive the additional fee, and whether the Company anticipates paying Citi and Goldman the additional fee.

52.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

53.     The omission of this information renders the statements in the "Opinions of Citi and Goldman Sachs, SRC's Financial Advisors" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

54.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of SRC will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

55.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

56.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

57.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about SRC and PDC management's financial projections for SRC, PDC and the pro forma company, the data and inputs

underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Citi and Goldman, and potential conflicts of interest faced by Citi and Goldman. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

58.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

59.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

60.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     The Individual Defendants acted as controlling persons of SRC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SRC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

65.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

66.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, SRC's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

19

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.


Dated: November 8, 2019                          Respectfully submitted,

                                                 /s/ *Richard A. Acocelli*
                                                 Richard A. Acocelli
                                                 **WEISSLAW LLP**
                                                 1500 Broadway, 16th Floor
                                                 New York, NY 10036
                                                 Telephone: (212) 682-3025
                                                 Facsimile: (212) 682-3010
                                                 Email: racocelli@weisslawllp.com

                                                 *Attorneys for Plaintiff*